IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

KATHERINE MEIGS,

Plaintiff,

v.

CARE PROVIDERS INSURANCE
SERVICES, LLC,

Defendant.

CIVIL ACTION
NO. 21-867

## OPINION

Slomsky, J.                                                    January 2, 2024

### TABLE OF CONTENTS

I.   INTRODUCTION ............................................................................................................. 2

II.  BACKGROUND ............................................................................................................... 2

III. STANDARD OF REVIEW ............................................................................................... 3

IV.  ANALYSIS ....................................................................................................................... 5

    A. Plaintiff is Entitled to Recover Reasonable Attorneys' Fees and Costs
       as a Prevailing Party ................................................................................................... 5

    B. Lodestar Calculation ................................................................................................... 6

      i. Reasonable Hourly Rates ......................................................................................... 8

      ii. Hours Not Reasonably Expended .......................................................................... 14

        1. Duplicative and Inflated Billing Entries ............................................................. 14

        2. Administrative Billing Entries ............................................................................ 16

        3. Ambiguous Billing Entries ................................................................................. 18

        4. Billing Entries Dedicated to Training Junior Associates and Paralegals ............... 22

        5. Total Lodestar Calculation ................................................................................. 23

      iii. Plaintiff's Request Will Not be Reduced Due to the Results Obtained ................... 23

      iv. Plaintiff's Request Will Not be Reduced Due to Plaintiff's Settlement Demand ...... 24

    C. Plaintiff is Entitled to Recover Reasonable Costs ...................................................... 26

V.   CONCLUSION ............................................................................................................... 27

I.    **INTRODUCTION**

On February 25, 2021, Plaintiff Katherine Meigs ("Plaintiff") filed this lawsuit against her former employer, Defendant Care Providers Insurance Services ("Defendant"), pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000(e) et seq., the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 et seq., and the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951, et seq.  (See Doc. No. 1.)  Plaintiff alleged that Defendant denied her a promotion and then terminated her because of her sex and pregnancy.  (See id.)

On January 13, 2023, the Court denied Defendant's Motion for Summary Judgment (Doc. Nos. 95, 96), and on April 11, 2023, denied Defendant's Motion for Reconsideration (Doc. No. 115).  (See Doc. No. 120.)  On April 28, 2023, Plaintiff accepted Defendant's Offer of Judgment in the amount of $75,000, plus reasonable attorneys' fees and costs.  (Doc. No. 121.)  Before the Court is Plaintiff's Petition for Attorneys' Fees and Costs.  (Doc. No. 124.)  For the following reasons, the Petition will be granted.

II.    **BACKGROUND**

On June 23, 2023, Plaintiff filed her Petition for Attorneys' Fees and Costs.  (Doc. No. 124.)  The Petition seeks $428,791[1] in attorneys' fees and $10,429.35 in costs.  (Id. at 2-3.)  The following attorneys from Console Mattiacci Law, LLC ("CML") comprised Plaintiff's legal team: Stephen G. Console, Laura C. Mattiacci, Holly Smith, Fernando I. Rivera, and Emily Derstine-Friesen.  (Id. at 7.)  They attest that they spent a total of 1,005.5 hours working on her case.  (Id.)

In the Motion, Plaintiff submits that attorneys' fees are warranted not only because the civil rights statutes authorize them to incentivize plaintiffs to act as "private attorney generals," but also

---

[1]    As noted below, this amount has been adjusted upward to $429,736 due to a miscalculation of the lodestar of Laura C. Mattiacci, Esquire.

because they are required when a party prevails on an FMLA interference or retaliation claim.  (Id. at 3-4.)  She further maintains that she "obtained excellent results at every turn in this case" and that the experience of her legal team and the reputation of CML warrant the requested attorneys' fees.  (See id. at 5, 8-15.)  Lastly, Plaintiff asserts that the requested hourly rates are reasonable because (1) they reflect CML's customary billing rates, (2) they comport with current market rates charged by attorneys with similar experience, skill, and reputation, as well as those maintained by some of the country's largest law firms, and (3) CML's customary rates, like the ones requested here, have been approved by other courts.  (See id. at 15-24.)

On July 21, 2023, Defendant filed a Response in Opposition.  (Doc. No. 125.)  Defendant argues that the Court should reduce Plaintiff's requested fees and costs for four reasons.  First, the amount requested is not reasonable in light of the results obtained.  (Id. at 6.)  Second, the requested fees should be reduced based on Plaintiff's "inflated settlement demand."  (Id. at 8.)  Third, the Court should reduce the hourly rates of Console and Mattiacci to no more than $700 per hour to reflect the prevailing market rates within the Philadelphia legal community.  (Id. at 9.)  Finally, Plaintiff seeks fees for categories of time entries that are not recoverable.  (Id. at 12.)  In particular, Defendant argues that Plaintiff cannot recover fees for billing entries that are: (1) duplicative or inflated, (2) administrative in nature, (3) ambiguous, and (4) dedicated to training more junior associates or paralegals.  (Id. at 12-22.)

For reasons that follow, Plaintiff's Petition (Doc. No. 124) will be granted.

## III.    STANDARD OF REVIEW

Under Title VII, "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee . . . as part of the costs."  42 U.S.C. § 2000e-5(k).  Further, under the FMLA, the Court "shall, in addition to any judgment awarded to plaintiff, allow a reasonable attorney's fee…

and other costs of the action to be paid by defendant." 29 U.S.C. § 2617(a)(3). A fee award "is within the district court's discretion so long as it employs correct standards and procedures and makes findings of fact not clearly erroneous." Loughner v. University of Pittsburgh, 260 F.3d 173, 178 (3d Cir. 2001) (quoting Pennsylvania Environ. Def. v. Canon-McMillan, 152 F.3d 228, 232 (3d Cir. 1998)). To obtain attorney's fees, a plaintiff must establish that they are the prevailing party and that the requested fees are reasonable. Hare v. Potter, 549 F. Supp. 2d 698, 702 (E.D. Pa. 2008) (citing Pino v. Locascio, 101 F.3d 235, 237 (2d Cir. 1996)).

Calculating attorney's fees involves multiplying the number of hours reasonably expended on an action by a reasonable hourly rate. Stover v. Riley, 30 F. Supp. 2d 501, 504 (E.D. Pa. 1998) (citing Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)). The product of this calculus is called a "lodestar." Id. (citing Washington v. Philadelphia County Court of Common Pleas, 89 F.3d 1031, 1035 (3d Cir. 1996)). In Clemens v. N.Y. Cent. Mut. Fire Ins. Co., the Third Circuit Court of Appeals explained how courts apply this formula:

> Under the lodestar method, '[t]he party seeking attorney's fees has the burden to prove that its request . . . is reasonable.' Rode v. Dellarciprete, 892 F.2d 1177, 1183 (3d Cir. 1990). 'When the applicant for a fee has carried [its] burden of showing that the claimed rates and number of hours are reasonable, the resulting product is presumed to be the reasonable fee to which counsel is entitled.' Maldonado v. Houstoun, 256 F.3d 181, 184 (3d Cir. 2001) (quoting Pennsylvania v. Del. Valley Citizens' Council for Clean Air, 478 U.S. 546, 564 (1986)). But courts 'have a positive and affirmative function in the fee fixing process, not merely a passive role.' Id. 'In calculating the hours reasonably expended, a court should 'review the time charged, decide whether the hours set out were reasonably expended for each of the particular purposes described and then exclude those that are 'excessive, redundant, or otherwise unnecessary.''' Id. (quoting Pub. Interest Research Grp. Of N.J. v. Windall, 51 F.3d 1179, 1188 (3d Cir. 1995).

903 F.3d 396, 400 (3d Cir. 2018).

But a court's calculation of the lodestar amount does not end its inquiry on a fee application. McKenna v. City of Philadelphia, 582 F.3d 447, 455 (3d Cir. 2009). In addition to reviewing the

hours reasonably expended, the Court may "adjust a fee upward or downward based upon the results obtained in a case." Id. (citing Hensley, 461 U.S. 424, 434).  This adjustment "should be taken independently of other adjustments and should be the first adjustment applied to the lodestar." Rode v. Dellarciprete, 892 F.2d 1177, 1183 (3d Cir. 1990).  "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." Hensley, 461 U.S. 424, 435.  On the other hand, if a plaintiff achieved partial or limited success, the "hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount." Id. at 436.  In making this determination there is "no precise rule or formula" and the court may "identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success." Id. at 436-37.

### IV.   ANALYSIS

#### A.  Plaintiff is Entitled to Recover Reasonable Attorneys' Fees and Costs as a Prevailing Party

Plaintiff initiated this action alleging three theories of liability: Title VII, the FMLA, and the PHRA.  (See Doc. No. 1.)  These statutes allow a prevailing party to recover an award of reasonable attorney fees and costs.  Under Title VII, a "court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee . . . as part of the costs." 42 U.S.C. § 2000e-5(k).  Similarly, "[u]nder the PHRA, the court may award attorneys' fees and costs to the prevailing party." Lett v. Int'l Ass'n of Sheet Metal, Air, Rail & Transp. Workers, Local 1594, No. 19-3170, 2023 WL 2163828, at *4 (E.D. Pa. Feb. 22, 2023) (citing 43 P.S. § 962(c.2)).  Further, under the FMLA "[t]he court in . . . an action [for FMLA interference or retaliation] shall, in addition to any judgment awarded to the plaintiff, allow a reasonable attorney's fee, reasonable expert witness fees, and other costs of the action to be paid by the defendant." 29 U.S.C. § 2617(a)(3).

Here, Defendant does not dispute that Plaintiff is entitled to attorneys' fees and costs as the prevailing party in the litigation. (Doc. No. 121-1 at 3; <u>see also</u> Doc. No. 125 at 4.)[2] Accordingly, the Court must determine whether the requested fees are reasonable.

## B. Lodestar Calculation

As described above, to determine whether the requested fees are reasonable, a court must calculate the lodestar amount by multiplying a reasonable hourly rate by the number of hours reasonably expended on the case. <u>Hensley</u>, 461 U.S. at 433. "This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services." <u>Id.</u> The party requesting fees bears the burden of proving that the requested fees are reasonable. <u>Id.</u> If Plaintiff meets this burden, a defendant may challenge the petition for fees based upon specific objections. <u>Boles v. Wal-Mart Stores, Inc.</u>, No. CIV.A. 12-1762, 2015 WL 4653233, at *5 (D.N.J. Aug. 5, 2015), <u>aff'd</u>, 650 F. App'x 125 (3d Cir. 2016). Without specific objections, the Court is not permitted to decrease the fee award. <u>Id.</u>

Here, Plaintiff requests $428,791 in attorneys' fees. (Doc. No. 124 at 2-3.) The requested fees are for the work of five attorneys. (<u>Id.</u> at 7.) Stephen Console, Esquire, the founder and co-managing member of CML, worked 33.6 hours on this case, at a requested rate of $960 per hour, which amounts to a lodestar of $32,256. (<u>Id.</u>) Laura Mattiacci, Esquire, co-managing member of CML, worked 235.8 hours on this case, at a requested rate of $870 per hour, which amounts to a

---

[2] Defendant's Offer of Judgment, which Plaintiff accepted, states "[n]evertheless, if Plaintiff accepts this Offer of Judgment, Defendant concedes that Plaintiff shall be deemed the 'prevailing party' in this litigation for purposes of determining reasonable counsel fees and costs." (Doc. No. 121-1 at 3.) Further, Defendant concedes that it "does not dispute Plaintiff's contention that she is entitled to fees and costs as the 'prevailing party' within the litigation, based upon the terms of the Offer of Judgment." (Doc. No. 125 at 9.)

lodestar of $205,146.[3]  (Id.)  Holly Smith, Esquire, an associate at CML, worked 589.6 hours on this case, at a requested hourly rate of $240, which amounts to a lodestar of $141,504. (Id.) Fernando I. Rivera, Esquire, an associate at CML, worked 137.6 hours on this case, at a requested hourly rate of $350, which amounts to a lodestar of $48,160.  (Id.)  Finally, Emily Derstine-Friesen, Esquire, an associate at CML, worked 8.9 hours on this case, at a requested hourly rate of $300, which amounts to a lodestar of $2,670.  (Id.)  In sum, with the correction for Mattiacci's work, Plaintiff requests a lodestar total of $429,736.

Plaintiff argues that she is entitled to compensation for the 1,005.5 hours expended by counsel on the litigation because "the hours CML expended in this case were reasonable" and "the firm did what was necessary to obtain judgment in Plaintiff's favor." (Doc. No. 124 at 8.)  Further, Plaintiff argues that CML charges a reasonable hourly rate for its services for three reasons.  (Id. at 15.)  First, the requested rates are the firm's customary rate charged to and paid by its hourly clients.  (Id. at 16.)  Second, the rates are in line with those charged by lawyers of reasonably comparable skill, experience, and reputation for similar services.  (Id. at 17.)  Finally, the requested rates have been approved in other litigations.  (Id. at 22.)

In support of the requested fees, Plaintiff submits (1) CML's billing entries describing the services performed in connection with this case (Doc. Nos. 124-1, 124-2); (2) Affidavits from Console, Mattiacci, and Smith (Doc. Nos. 124-3, 124-4, 124-5); and (3) the 2017 National Law Journal Survey of Billing Rates (Doc. No. 124-6).

---

[3]  In the Petition, Plaintiff incorrectly calculates the lodestar for Mattiacci's work.  Plaintiff calculates a total of $204,201 for 235.8 hours worked at a rate of $870.  (Doc. No. 124 at 7.) The Court notes that 235.8 hours at the requested $870 per hour rate amounts to a lodestar of $205,146.  Therefore, the Court will construe Plaintiff's Petition to request a lodestar of $205,146 for Mattiacci's work on the case.

Defendant, on the other hand, asks the Court to adjust the requested attorneys' fees for four reasons.  First, it contends that the hourly rates for Console and Mattiacci are excessive.  (Doc. No. 125 at 9.)  Second, the number of hours worked are excessive.  (Id. at 17.)  Third, the lodestar should be adjusted downward to reflect the limited success in Plaintiff's case.  (Id. at 11.)  Fourth, the lodestar should be adjusted downward due to Plaintiff's settlement demand.  (Id. at 13.)  The Court will address each argument in turn.

### i.  Reasonable Hourly Rates

Defendant does not dispute the hourly billing rates of Smith, Rivera, or Derstine-Friesen.[4] Defendant does dispute, however, the hourly rates of Console and Mattiacci.  To determine an appropriate hourly rate, "a court must assess the experience and skill of the prevailing party's attorneys and compare their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." Loughner, 260 F.3d at 180. In general, "a reasonable hourly rate is calculated according to the prevailing market rates in the community." Washington, 89 F.3d at 1035.  "The party seeking attorney's fees has the burden to prove that its request for attorney's fees is reasonable." Rode, 892 F.2d at 1183.  The opposing party then has the "burden to challenge, by affidavit or brief with sufficient specificity to give fee applicants notice, the reasonableness of the requested fee." Id. at 1183.

Plaintiff requests an hourly rate of $960 for Console.  (Doc. No. 124 at 7.)  Console, CML's founder and co-managing member, has been practicing law for over thirty years and has concentrated his practice on employment law.  (Doc. No. 124-3 at 2.)  Throughout his career,

---

[4]  In reviewing a lodestar calculation, a court "may not award less than requested unless the opposing party makes specific objections." Middlebrooks v. Teva Pharms. USA, Inc., No. CV 17-412, 2019 WL 936645, at *4 (E.D. Pa. Feb. 26, 2019).  Here, Defendant does not object to the requested hourly rates of Smith, Rivera, and Derstine-Friesen.

Console has been recognized as a successful employment law practitioner by the Pennsylvania legal community.[5]  (Id. at 3.)

Next, Plaintiff requests an hourly rate of $870 for Mattiacci.  (Doc. No. 124 at 7.)  Mattiacci is a co-managing member of CML.  (Doc. No. 124-4 at 2.)  Like Console, Mattiacci has devoted her twenty-year career to employment law matters.  (Id.)  During that time, she has tried numerous jury trials as lead counsel, including a case that resulted in the largest employment law verdict in Pennsylvania.  (Doc. 124 at 19.)  Mattiacci has been recognized as a top employment law practitioner in the Pennsylvania legal community.[6]

---

[5]  In Console's Declaration, he attests to the following list of accolades:

 I was named as a leading attorney in the state of Pennsylvania in the area of plaintiff's employment and labor law in Chambers USA: America's Leading Business Lawyers 2005-2006, as one of the Best Lawyers in America (2008-2014) in the area of Labor and Employment Law, in Best Lawyers in America, as one of the Best Lawyers in The Best of the U.S. (2008-2013), and as one of the Best Lawyers in America in America's Who's Who. I was named the Best Lawyers' 2012 Philadelphia Employment Law – Individuals Lawyer of the Year. I was named to the 'Top 100 Attorneys in Philadelphia' and 'Top 100 Attorneys in Pennsylvania' by Philadelphia Magazine and Philadelphia Super Lawyers Magazine from 2008-present.

(Doc. No. 124-3 at 3.)

[6]  In Mattiacci's Declaration, she attests to the follow accolades:

I have been named to the list of 'Top 50 Female Attorneys in Pennsylvania' by Philadelphia Magazine and Philadelphia Super Lawyers Magazine 2014-2021, and to their list of 'Top 100 Attorneys in Philadelphia' and 'Top 100 Attorneys in Pennsylvania' in 2015 and 2018-2021. I have been named to the Pennsylvania 'Super Lawyers' list by Philadelphia Magazine and Philadelphia Super Lawyers Magazine every year since 2013. I was named to the '2011 Lawyers on the Fast Track' by The Legal Intelligencer, a distinction given to only 27 lawyers under the age of 40. In 2021, I was named to the 'Employment Litigation – Plaintiff' List of New Jersey Super Lawyers. I have been included in Best Lawyers in America Philadelphia List of 'Lawyer of the Year' category

Plaintiff argues that "CML's usual and customary rates are consistent with rates charged by defense firms based in Philadelphia." (Id. at 21.)  In support of this argument, Plaintiff refers to Console's Declaration where he attests that the requested rates are within the prevailing market rates for similar work performed by attorneys of comparable skills and experience. (Id. at 20-21.) Similarly, Plaintiff submits Mattiacci's Declaration where she attests that her regular hourly rate is $870, which is the customary rate CML clients pay for her services. (Doc. No. 124-4 at 9.)  In addition to the Declarations, Plaintiff submits that the 2017 National Law Journal Survey of Billing Rates ("2017 Survey") shows that CML's requested rates are in line with market rates. (Doc. No. 124 at 21.)  Further, Plaintiff puts forth examples of several litigations where CML's usual and customary rates have been approved.[7]

---

of Employment Law – Individuals (2015-2021). I was recognized in Best Lawyers in America in the area of Employment Law (2015-2021) and by Lawdragon 500 Plaintiff Employment Lawyers Guide (2018).

(Doc. No. 124-4 at 6-7.)

[7]   In her Petition, Plaintiff refers to the following cases where CML's rates were discussed: (1) Hightower v. Ingerman Management Company, et al., No. 17-cv-08025, ECF No. 400 (D.N.J. Oct. 25, 2022) (where Judge Christine P. O'Hearn approved Console's and Mattiacci's requested rates because they commensurate with the usual and customary rates charged by CML, the skill and experience of the attorneys, and the "prevailing range of rates in this market for attorneys of this type and this caliber in [employment] matters"); (2) Ray v. AT&T Mobility Servs., LLC, No. CV 18-3303, 2022 WL 1203730 (E.D. Pa. Apr. 22, 2022) (where Judge Timothy R. Rice reduced Console's and Mattiacci's requested hourly rates to reflect the prevailing market rates but increased Mattiacci's rate as set forth by the Community Legal Services Fee Schedule to match Console's due to her "extraordinary record of courtroom achievement," "exceptional advocacy skills," and experience level); (3) Mammen v. Thomas Jefferson University, et al., No. 20-cv-127, ECF No. 74 (E.D. Pa. Oct. 13, 2021) (where Judge Wendy Beetlestone approved Console's and Mattiacci's requested hourly rates as a sanction in a discovery dispute finding that they were calculated according to prevailing market rates in the Philadelphia legal community); (4) Gasper v. Schulson Collective, LLC, No. CV 19-2676, 2020 WL 5878263 (E.D. Pa. Oct. 2, 2020) (approving the rates of Rivera, whose requested hourly rate is undisputed in this litigation); and (5) Giedgowd v. Cafaro Grp., LLC, No. CV 20-6184, 2021 WL 4963532 (E.D. Pa. Oct. 26, 2021) (where Judge Mark Kearney approved the requested rates of some CML attorneys but reduced Console's requested rate.  Mattiacci did

In its Opposition, Defendant argues that the hourly rates for Console and Mattiacci should be reduced to $700 to "reflect the prevailing rates within the Philadelphia legal community for attorneys of their caliber, reputation, and skill." (Doc. No. 125 at 14.)  Defendant argues that the requested fees should be reduced for three reasons.  (Id.)  First, the hourly rates are only supported by Plaintiff's own affidavits.  (Id. at 15.)  Second, recent decisions in this District involving CML "endorsed significantly lower rates for attorney Console and attorney Mattiacci."  (Id. at 16.) Third, litigating this case did not preclude counsel from litigating other matters.  (Id.)

Here, Plaintiff has shown that the requested hourly rates for Console and Mattiacci are reasonable.  Console's Declaration attests "[t]he rates used in the calculation of the lodestar are the firm's customary and usual hourly rates." (Doc. No. 124-3 at 8.)  Mattiacci's Declaration further attests that her requested hourly rate is CML's customary rate for her services. (Doc. No. 124-4 at 9.)  While the Declarations may be a starting point in determining an appropriate hourly rate, the United States Supreme Court has explained: "the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."  Blum v. Stenson, 465 U.S. 886, 896 n.11 (1984).

Here, Plaintiff submits the 2017 Survey in further support of the requested hourly rates for Console and Mattiacci.  (Doc. No. 124-6.)  According to the 2017 Survey, Blank Rome reported an hourly rate of up to $725 for partners.  (Id. at 3.)  Cozen O'Connor reported an hourly rate of

_____

not request fees in the Giedgowd case).  (Doc. No. 124 at 22-24.)  Although CML did not receive the requested hourly rate in every case, enough has been said in court decisions about the reputation and experience of Console and Mattiacci to convince this Court that other judges view them as exceptional lawyers who warrant in 2023 the hourly rate requested in this case.

up to $730 for partners.  (Id. at 4.)  Saul Ewing reported an hourly rate of up to $780 for partners. (Id. at 14.)

Plaintiff argues that the Court should factor inflation into its calculation while reviewing the 2017 Survey data: "Given inflation, it's very likely that Defendant is paying the partners assigned to its cases at hourly rates within the range of those requested for the work of Mr. Console and Ms. Mattiacci."  (Doc. No. 124 at 22, n. 6.)  "[I]t has long been true" in the Third Circuit that "[w]hen attorney's fees are awarded, the current market rate must be used."  Earley v. JMK Assocs., No. CV 18-760, 2020 WL 1875535, at *1 (E.D. Pa. Apr. 15, 2020) (quoting Lanni v. New Jersey, 259 F.3d 146, 149 (3d Cir. 2001)).  The current market rate is measured at the time of the fee petition.  Id.  In Earley v. JMK Associates, the court noted that regional billing rates have increased between five and seven percent in recent years and cited cases that increased rates by five percent per annum.  Id. (citing Homer v. Law Offices of Frederic I. Weinberg & Assocs., P.C., 2018 WL 2239556, at *3 (E.D. Pa. May 16, 2018)).  Therefore, considering the customary rates in the 2017 Survey and adjusting them for inflation over six years, Plaintiffs requested rates are reasonable.

The Court further finds that Plaintiff's requested rates adequately reflect the experience and credentials of Console and Mattiacci.  Console is CML's founder and co-managing member with nearly forty years of experience in employment law.  As described above, Plaintiff's Petition describes with specificity the profound reputation Console has in the Philadelphia legal community.  Like Console, Mattiacci serves as a co-managing member of CML and has over twenty years of experience in employment matters.  Mattiacci's Declaration describes her extensive experience as lead trial counsel in employment matters and the recognition she has received for her work in the Philadelphia legal community.  (See Doc. No. 124-4 at 2-3.)

12

In addition, the Court concurs with other judges in this Circuit who presided over cases with Console and Mattiacci as counsel in recognizing their stellar reputation and expertise in the field of employment matters.[8]  See Hightower v. Ingerman Management Company, et al., No. 12-cv-08025, Doc. No. 400 (D.N.J. Oct. 25, 2022) ("the skills, ethics, and professionalism exhibited by [Console and Mattiacci]…was exceptional."); see also Ray v. AT&T Mobility Servs., LLC, No. CV 18-3303, 2022 WL 1203730 (E.D. Pa. Apr. 22, 2022) ("Mattiacci has devoted her practice to employment law for 19 years, has been a shareholder for 10 years, is well-recognized as a leading employment trial attorney, and has developed an extraordinary record of courtroom achievement…Such expertise justifies a premium to the rate allocated to an attorney of her experience level…").  The skill and experience displayed by CML Lawyers in cases before this Court further support their requested rates.[9]

---

[8]  This Court concurs with other decisions that approved Console's and Mattiacci's requested rates.  For example, as cited by Plaintiff in her Petition, Judge O'Hearn held that the caliber, skill, and experience displayed by Console and Mattiacci warrants their requested fees.  Judge O'Hearn stated:

> while [the requested rates] may be at the top end of the prevailing current rates, I think for all of the reasons that I've said that it's appropriate in this case. I think that those rates are commensurate with the usual and customary rates; it's commensurate with the skill and experience of those attorneys, based on my own personal observations during this case, as well as those of other Courts in other cases; I think it's commensurate with the prevailing range of rates in this market for attorneys of this type and this caliber in these types of matters.

Hightower v. Ingerman Management Company, et al., No. 17-cv-08025, ECF No. 400 at 14 (D.N.J. Oct. 25, 2022).

[9]  In particular, the Court notes the skill and experience of Laura Mattiacci, Esquire, in Phillips v. Starbucks Corporation, a case tried before this Court.  See Phillips v. Starbucks Corporation, No. 19-cv-19423 (D.N.J.).  There, a complex employment matter was litigated in 2023 and the jury awarded the plaintiff a total of $600,000 in compensatory damages and $25,000,000 in punitive damages.  Phillips, ECF 150 at 2-3.

In Phillips, defendant Starbucks Corporation was represented by the firm Holland & Knight LLP.   CML requested a $960 hourly rate for Console and an $870 hourly rate for Mattiacci,

In all, Console and Mattiacci's requested rates fairly extrapolate from rates charged in the community for similar services and adequately compensate for counsel's considerable trial experience, reputation in the legal community, and expertise.

### ii.  Hours Not Reasonably Expended

Next, Defendant argues that Plaintiff should not recover fees for entries that are: (1) duplicative and inflated, (2) administrative in nature, (3) ambiguous, and (4) dedicated to training junior associates and paralegals.  (See Doc. No. 125 at 12-24.)

The Supreme Court has said that "fee applicants should exercise 'billing judgment' with respect to hours worked and should maintain billing time records in a manner that will enable a reviewing court to identify distinct claims."  Hensley, 461 U.S. 424, 434 (quoting Copeland v. Marshall, 641 F.2d 880, 891 (D.C. Cir. 1980)).  A court should exclude from this initial fee calculation hours that were not "reasonably expended," which includes hours that are "excessive, redundant, or otherwise unmercenary."  Id. at 433-34.  Here, the Court has gone "line, by line, by line" through Plaintiff's submitted billing records to determine their reasonableness.  Evans v. Port Auth. of New York & New Jersey, 273 F.3d 346, 362 (3d Cir. 2001).  In evaluating the reasonableness of Plaintiff's proposed expended hours under Hensley, the Court will discuss Defendant's arguments in turn.

### 1.  Duplicative and Inflated Billing Entries

First, Defendant argues Plaintiff's Petition contains billing entries that are duplicative and inflated.  (Doc. No. 125 at 17.)  In particular, Defendant takes issue with (1) two October 17, 2022

---

the same rates sought in the instant Petition.   Phillips, ECF 168 at 4.  Holland & Knight did not object to these hourly rates CML requested from Starbucks.  Phillips, ECF 181 at 7.  This shows that in 2023 the hourly rates charged by Console and Mattiacci were appropriate given their skill and experience in litigating employment matters, let alone the need to adjust rates for inflation.

entries from Console seeking fees for attending a settlement conference, (2) the 170.5 hours Mattiacci spent on trial preparation, and (3) Mattiacci's fees related to trial preparation. (Id. at 17-21.)

The Third Circuit has held "[a] reduction for duplication 'is warranted only if the attorneys are unreasonably doing the same work.'" Rode, 892 F.2d at 1187 (quoting Jean v. Nelson, 863 F.2d 759, 773 (11th Cir. 1988)). The Court will reduce Console's requested hours by two hours because CML does not dispute that his October 17, 2022 entries are duplicative.[10]

But the Court will not reduce Mattiacci's hours related to trial preparation. As described in Mattiacci's Declaration, this matter was originally scheduled for trial on January 17, 2023. (Doc. No. 124-4 at 8.) Ultimately, trial was rescheduled for May 26, 2023. (Id.) On April 18, 2023, Defendant made the Offer of Judgment. (Id.) During that time, Mattiacci "devoted the time and attention to the preparation of this case in anticipation for trial" as she believed to be necessary. (Id.) Courts have held that "[w]e cannot second guess the amount of time specifically described in each bill" and "[e]ach lawyer needs the time she needs to be ready. She has a professional obligation to be prepared." Middlebrooks, 2019 WL 936645, at *9. Mattiacci's Declaration explains that she "devoted the time and attention" for trial preparation as she "believed in [her] experience and professional opinion to be necessary to win it." (Doc. No. 124-4 at 8.) Therefore, the Court will not reduce the hours or fees related to Mattiacci's trial preparation.

---

[10] According to Plaintiff's Billing Spreadsheet (Doc. No. 124-1), Console is requesting fees for a duplicative entry. On October 17, 2022, Console entered a billing entry for "Settlement Conference with Holly W. Smith, Esquire with client." (Id. at 2.) The next billing entry, on the same date, charges time for Console to "[p]rep and attend Settlement Conference with Holly W. Smith, Esquire and client." (Id.) Both entries are for two hours of time at an hourly rate of $960, totaling $1,920 for each entry. In her Reply, Plaintiff concedes that these entries are duplicative. (Doc. No. 128 at 7, n. 3.)

## 2.  Administrative Billing Entries

Second, Defendant argues Plaintiff may not recover for clerical and administrative tasks.

(Doc. No. 125 at 21.)  In its Opposition, Defendant lists the following eighteen entries as improper

for reimbursement:

1.  Attorney Holly Smith's 11/14/2022 "Email Correspondence with client regarding trial schedule[,]" totaling approximately $840.00, ECF No. 24-1 at 7;

2.  Ms. Smith's 3/7/2022, 3/17/2022, 7/27/2022, 8/23/2022, 8/24/2022, 9/2/2022, 9/22/2022, 9/30/2022, 10/5/2022, 10/18/2022, 10/27/2022, 10/31/2022, and 11/1/2022 "Emails with opposing counsel regarding deposition scheduling[,]" totaling $648.00, id. at 8–9;

3.  Ms. Smith's 8/8/2022 "Email with opposing counsel regarding deposition scheduling; Emails with opposing counsel regarding rescheduling settlement conference, telephone conference with Fernando I. Rivera, regarding same[,]" totaling approximately $144.00, id. at 8;

4.  Ms. Smith's 8/8/2022 "Email with opposing counsel re dep. schedule, PIN for Agile law; email with Alexis Rodriguez [believed to be a paralegal at Plaintiff's Counsel's law firm[,]" totaling $120.00, id.;

5.  Ms. Smith's 4/11/2022 and 4/13/2022 "Exchange[ of] emails with opposing counsel regarding outstanding discovery[,]" totaling $480.00, id. at 9;

6.  Ms. Smith's 3/17/2022 "Exchange[ of] emails regarding extension request and review of extension request[,]" totaling $480.00, id.;

7.  Attorney Fernando Rivera's 8/2/2022 "Review and respon[se] to court reporter emails regarding 8/3 deposition; review and respond to emails regarding 8/2 telephone conference[,]" totaling approximately $105.00, id. at 11;

8.  Mr. Rivera's 8/2/2022 "Review and respon[se] to court reporter and opposing counsel emails regarding request for extension[,]" totaling approximately $297.50, id.;

9.  Mr. Rivera's 6/30/2022 "Review and respon[se] to opposing counsel and Holly W. Smith, Esquire [his co-worker] emails regarding deposition scheduling[,]" totaling approximately $140.00, id. at 12;

10. Mr. Rivera's 6/9/2022 "Review and respon[se] to opposing counsel emails regarding status update on discovery disputes/deposition scheduling[,]" totaling $70.00, id. at 13;

11. Mr. Rivera's 6/9/2022 "Review and respon[se] to opposing counsel and Court emails regarding cancellation of 6/9 OA[11][,]" totaling $70.00, id.;

12. Mr. Rivera's 4/22//2022 "Review and respon[se] to clerk email regarding rescheduled 4/26 OA[,]" totaling $35.00, id.;

13. Mr. Rivera's 4/18/2022 "Review of emails regarding Defendant's supplemental document production and uploading to Everlaw[,]" totaling $175.00, id.;

14. Mr. Rivera's 4/6/2022 "telephone conference with Alexis Rodriguez regarding case list meeting[,]" totaling $70.00, id. at 14;

15. Mr. Rivera's 4/1/2022 "review [of] emails regarding Defendant's DDOCs"[,] totaling $70.00, id.;

16. Mr. Rivera's 3/16/2022 "[r]eview of emails regarding check request for trans[,]" totaling $70.00, id.;

17. Mr. Rivera's 1/11/2022 "Review and respon[se] to opposing counsel email regarding scheduling meet and confer[,]" totaling $70.00, id. at 15; and,

18. Mr. Rivera's 8/1/2022 "review and respon[se] to court and opposing counsel emails regarding request for extension[,]" totaling approximately $297.50. Id. at 11.

(Doc. No. 125 at 22-23.)

As a general rule, time that would not be billed to a client cannot be imposed on an adversary. Pub. Interest Research Grp. v. Windall, 51 F.3d 1179, 1188 (3d Cir. 1995). Thus, administrative tasks, which are not the type normally billed to a paying client, may not be recovered by a party through a fee petition. See Spegon v. Catholic Bishop of Chi., 175 F.3d 544, 552 (7th Cir. 1999). Administrative tasks "may include opening a file in a database, mailing letters, copying documents, entering case updates in a management system, calendaring deadlines, confirming court contact information, and talking with a process server or court clerk." Navarro v. Monarch Recovery Mgmt. Inc., No. CIV.A. 13-3594, 2014 WL 2805244, at *5 (E.D. Pa. June

---

[11] "OA" apparently stands for "Oral Argument."

20, 2014) (quoting <u>Westberry v. Commonwealth Fin. Sys., Inc.</u>, No. CIV.A. 11-4387 JEI, 2013 WL 435948, at *5 (D.N.J. Feb. 4, 2013)).  However, "reviewing emails, communicating with other…lawyers, [and] reviewing docket notices" are examples of substantive tasks that are not considered to be administrative.  <u>Zavodnick v. Gordon & Weisberg, P.C.</u>, No. CIV. 10-7125, 2012 WL 2036493, at *7 (E.D. Pa. June 6, 2012).

Here, Plaintiff's Petition does not request fees for administrative tasks.  In the instances listed above, Plaintiff's attorneys reviewed and responded to emails and had a telephone conference.  Courts have held that "[p]ertinent communications among attorneys within a firm, with a client, or with the opposing party are not administrative in nature."  <u>Navarro</u>, 2014 WL 2805244, at *5 (quoting <u>Murphy v. Receivable Mgmt. Servs. Corp.</u>, No. 12–3768, 2013 WL 1905149, at *4 (E.D. Pa. May 8, 2013)).  Therefore, these tasks are not administrative. Accordingly, the Court will not reduce Plaintiff's fee award for these entries.

### 3.  Ambiguous Billing Entries

Third, Defendant argues that Plaintiff may not recover fees related to ambiguous billing entries.  (Doc. No. 125 at 24.)  In particular, Defendant disputes the following entries as vague ambiguous:

1. Attorney Stephen Console's 2/16/2023 "telephone conference with Holly W. Smith, Esquire, emails to/from attorneys, telephone conference with Laura C. Mattiacci, Esq. [,]" totaling $1,920.00, ECF No. 24-1 at 2;

2. Mr. Console's 12/30/2022 "review of court's order, emails to/from attorneys regarding case updates [,]" totaling $192.00, <u>id.</u>;

3. Mr. Console's 2/2/2023 "telephone conference with Laura C. Mattiacci, Esquire and Holly W. Smith, Esquire, file review, trial strategy[,]" totaling $1,440.00, <u>id.</u>;

4. Mr. Console's 10/13/2022 "telephone conference with Holly Smith, Esquire, Zoom meeting with Holly Smith, Esquire and client, Texts to/from Laura

Mattiacci, Esquire, telephone conference with opposing counsel, emails to/from attorneys[,]" totaling $960.00, id.;

5. Mr. Console's 9/4/2019 "Internal conference with Emily Derstine Friesen, Esquire, voicemail for opposing counsel[,]" totaling $384.00, id. at 3;

6. Attorney Laura C. Mattiacci's "internal conference with Holly[,]" totaling approximately $217.50, id. at 4;

7. Ms. Mattiacci's 2/1/2023 "telephone conference with client[,]" totaling approximately $180.00, id.;

8. Ms. Smiths's 12/30/2023 and 1/3/2023 "Exchange[]/review[ of] emails with opposing counsel[,]" totaling approximately $1,260.00, id. at 6;

9. Ms. Smiths's 8/10/2022 "Emails with opposing counsel; emails will Alexis Rodriquez[,]" totaling approximately $192.00, id. at 8;

10. Ms. Smith's 7/1/2022, 7/5/2022, and 7/7/2022 "Email correspondence with client regarding supplemental documents[,]" totaling $288.00, id. at 9;

11. Ms. Smith's 10/19/21 "Internal conference with Stephen G. Console, Esquire regarding case; Internal conference with Fernando I. Rivera regarding case[,]" totaling $288.00, id. at 10;

12. Mr. Rivera's 8/1/2022 "Zoom meeting with Stephen G. Console, Esquire/Laura C. Mattiacci, Esquire/Holly W. Smith, Esquire; telephone conference with Holly W. Smith, Esquire regarding recap[,]" totaling approximately $297.50, id. at 11;

13. Mr. Rivera's 7/13/2022 "review [of] Holly W. Smith, Esquire's memo to file[,]" totaling $35.00, id. at 12;

14. Ms. Emily R. Derstine Friesen's 8/5/2020, 8/7/2020, and 6/15/2022 "Email[s] with Holly W. Smith, Esquire[,]" totaling $90.00, id. at 17;

15. Ms. Derstine Friesen's 9/8/2020 "Email[s] with [an unknown person named] AES[,]" totaling $30.00, id.;

16. Ms. Derstine Friesen's 10/9/2019, 2/7/2020, 4/13/2020, 6/23/2020, and 7/24/2020 "[E]mail[s] with client[,]" totaling $150.00, id.;

17. Ms. Derstine Friesen's 4/16/2020 "Telephone conference with Holly W. Smith, Esquire; telephone conference with client with Holly W. Smith, Esquire[,]" totaling $120.00, id.;

19

18. Ms. Derstine Friesen's 4/16/2020 "Telephone conference with Stephen G. Console, Esquire[,]" totaling $60.00, <u>id.</u>;

19. Ms. Derstine Friesen's 4/11/2020 "Email with client; email with Holly W. Smith, Esquire[,]" totaling $120.00, <u>id.</u>;

20. Ms. Derstine Friesen's 4/3/2020 "Telephone conference with Stephen G. Console, Esquire; telephone conference with Stephen G. Console, Esquire and Laura C. Mattiacci, Esquire; email with Laura C. Mattiacci, Esquire and Holly W. Smith, Esquire[,]" totaling $180.00, <u>id.</u>;

21. Ms. Derstine Friesen's 2/10/2020 "[E]mail[s] with client; telephone conference with client, internal conference with Stephen G. Console, Esquire; telephone conference with witness; make note to file[,]" totaling $420.00, <u>id.</u>;

22. Ms. Derstine Friesen's 11/15/2019 "[E]mail[s] with opposing counsel[,]" totaling $30.00, <u>id.</u>;

23. Ms. Derstine Friesen's 11/14/2019 "Internal conference with Stephen G. Console, Esquire; telephone conference with opposing counsel; telephone conference with client; make note to file[,]" totaling $240.00, <u>id.</u>;

24. Ms. Derstine Friesen's 10/31/2019 "internal conference with Stephen G. Console, Esquire" totaling $60.00, <u>id.</u>;

25. Ms. Derstine Friesen's 9/4/2019 "internal conference with Stephen G. Console, Esquire; telephone conference with opposing counsel and Stephen G. Console, Esquire[,]" totaling $60.00, <u>id.</u>;

26. Ms. Derstine Friesen's 8/26/2019 "file complaint; email with client[,]" totaling $90.00, <u>id.</u>;

27. Ms. Derstine Friesen's 8/23/2019 "Email with client; update complaint[,]" totaling $180.00, <u>id.</u>;

28. Ms. Derstine Friesen's 8/22/2019 "Email with client; update complaint; read[ing of] documents[,]" totaling $180.00, <u>id.</u>;

29. Ms. Derstine Friesen's 8/21/2019 "Email with client; update complaint; read[ing of] documents[,]" totaling $210.00, <u>id.</u>;

30. Ms. Derstine Friesen's 8/20/2019 "draft[ing of the] complaint; read[ing of] documents; email with client[,]" totaling $480.00, <u>id.</u>; and,

31. Ms. Smith's 5/25/2022 "telephone conference with Fernando I. Rivera, Esquire[,]" totaling $120.00, <u>id.</u> at 9.

(Id. at 24-27.)  Defendant contends that these billing entries "are so vague that there is no way for the Court to discern whether they are reasonable."  (Id. at 27) (quoting Clemens, 903 F.3d at 401 (3d Cir. 2018)).

A court may "deduct hours when the fee petition inadequately documents the hours claimed."  Rode, 892 F.2d at 1183.  A petition for fees must be "specific enough to allow the district court to determine if the hours claimed are unreasonable for the work performed."  Washington, 89 F.3d at 1037 (3d Cir. 1997).  To be specific enough, a petition should "indicate the nature of the activity, the subject matter of the activity, the date the activity took place, and the amount of time spent on the activity."  Rode, 892 F.2d at 1191.  "Where the documentation of hours is inadequate, the district court may reduce the award accordingly."  Hensley, 461 U.S. at 433.

Here, the challenged entries are not vague or ambiguous.  Plaintiff's fee petition is sufficiently detailed to allow the Court to determine the reasonableness of the hours performed.  Defendant objects to entries that contain phrases such as "emails to," "telephone conference with," and "review of."  These descriptions, however, have been deemed adequately descriptive by courts.  In Giedgowd v. Cafaro Group, the court found that "[t]ime entries such as 'miscellaneous research, telephone conversations, and conferences concerning facts, evidence, and witnesses' are sufficiently specific."  Giedgowd v. Cafaro Grp., LLC, No. CV 20-6184, 2021 WL 4963532, at *6 (E.D. Pa. Oct. 26, 2021) (internal citation omitted).  Further, in Shane T. by & through Cathy K. v. Carbondale Area School District, the court found that billing entries labeled as "update case status" or "discuss case status" were sufficiently descriptive.  Shane T. by & through Cathy K. v. Carbondale Area Sch. Dist., No. CV 3:16-00964, 2021 WL 4478237, at *5 (M.D. Pa. Sept. 30,

2021).  Accordingly, no hours will be deducted from the lodestar calculation based on Defendant's claim that Plaintiff's billing entries are vague and ambiguous.

### 4. Billing Entries Dedicated to Training Junior Associates and Paralegals

Finally, Defendant argues that Plaintiff may not recover fees for time dedicated to training more junior associates and paralegals.  (Doc. No. 125 at 27.)  In particular, Defendant takes issue with billing entries made by a senior associate at CML, Fernando Rivera.  (Id.)  In the disputed entries, Rivera bills for time relating to work with a junior associate, Holly Smith, and a paralegal, Alexis Rodriguez.  (Id.)  The disputed billing entries describe tasks such as reviewing and responding to emails and attending telephone conferences with Smith and Rivera.[12]  (Id. at 28-30.)

In response, Plaintiff submits that Defendant mischaracterizes these billing entries as being related to training.  (Doc. No. 128 at 9.)  Instead, Plaintiff argues these entries reflect permissible internal conferences, collaboration, and communications between Rivera, Smith, and Rodriguez. (Id.)  The Court agrees.

In Security and Data Technologies, Inc. v. School District of Philadelphia, the court found it "entirely reasonable and prudent" that a senior associate confers with junior associates while working on a case.  Sec. & Data Techs., Inc. v. Sch. Dist. Of Philadelphia, No. CV 12-2393, 2016 WL 7427758, at *14 (E.D. Pa. Dec. 20, 2016) (citing Sheffer v. Experian Info. Sols., Inc., 290 F. Supp. 2d 538, 547 (E.D. Pa. 2003) ("reasonable trial preparation entails collaboration and rehearsal among attorneys")).  Further, the court found that hours spent "delegating tasks, coordinating efforts and reviewing work" were reasonably billed.  Id.  The disputed entries in this case describe similar coordinating efforts in carrying out of various tasks pertinent to this litigation.

---

[12] Defendant also contends these entries are improper because they are ambiguous.  (Doc. No. 125 at 28.)  As discussed above, this argument is unavailing.

Accordingly, no hours will be deducted from the lodestar calculation based on Defendant's claim that Plaintiff's billing entries are improper entries for training junior associates and paralegals.

### 5.   Total Lodestar Calculation

Given the above, the Court calculates the lodestar as follows:

| Attorney | Hours Worked | Hourly Rate | Lodestar |
|---|---|---|---|
| Stephen G. Console, Esq. | 31.6 | $960 | $30,336 |
| Laura C. Mattiacci, Esq. | 235.8 | $870 | $205,146 |
| Holly Smith, Esq. | 589.6 | $240 | $141,504 |
| Fernando I. Rivera, Esq. | 137.6 | $350 | $48,160 |
| Emily Derstine-Friesen, Esq. | 8.9 | $300 | $2,670 |
| TOTAL | 1,003.5 | | $427,816 |

Next, the Court will consider whether the lodestar should be adjusted downward.

### iii.   Plaintiff's Request Will Not be Reduced Due to the Results Obtained

Once the Court calculates the lodestar, it may adjust a fee based upon the results obtained in a case.  Hensley, 461 U.S. 424, 434.  This inquiry is "particularly crucial where a plaintiff is deemed 'prevailing' even though he succeeded on only some of his claims for relief."  Id.  "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." Id. at 435.  However, if a "plaintiff has achieved only partial or limited success," the lodestar may be an excessive amount.  Id.  In making this determination there is "no precise rule or formula" and the court may "identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success."  Id. at 436-37.

In Plaintiff's Petition she maintains that the requested fee is appropriate because "Plaintiff obtained excellent results at every turn in this case."  (Doc. No. 124 at 4.)  In contrast, Defendant argues that Plaintiff's overall lodestar calculation should be reduced based on "the relatively low degree of success [Plaintiff's attorneys] obtained on Plaintiff's behalf."  (Doc. No. 125 at 11.) Specifically, Defendant argues that considering Plaintiff's $75,000 judgment, the request for fees

amounting to $428,791 would cause a "windfall" in light of the results and "exorbitant under the circumstances." (Id.)

Here, Plaintiff was successful on all her claims. The Offer of Judgment "allow[ed] judgment to be taken against [Defendant] with respect to all claims set forth in the Complaint." (Doc. No. 121-1 at 2.)  The Offer further stated that the Offer, if accepted, "would fully satisfy any and all of Plaintiff's claims pending, except any claim for reasonable counsel fees and costs." (Id.)

Further, the Court is not persuaded by Defendant's argument that the requested fees would create a windfall for Plaintiff's attorneys in light of the results obtained.  The United States Supreme Court has held that there is "no evidence that Congress intended that, in order to avoid 'windfalls to attorneys,' attorney's fees be proportionate to the amount of damages a civil rights plaintiff might recover." City of Riverside v. Rivera, 477 U.S. 561, 580 (1986).  Further, the Third Circuit "has expressed serious concerns with the practice of limiting an award of attorney's fees to maintain proportionality between the fees and the amount of damages awarded." Washington, 89 F.3d at 1039.  In fact, the Third Circuit has made clear "the district court cannot adjust counsel fees to maintain a certain ratio between the fees and damages—to insure, for instance, that fees not exceed three times the amount of damages." Id. at 1042.  Because Plaintiff succeeded in all her claims related to the litigation, the Court will not depart downward from the calculated lodestar based on the results obtained.

### iv.  Plaintiff's Request Will Not be Reduced Due to Plaintiff's Settlement Demand

Defendant further argues that "[t]he fact that Plaintiff's Counsel ultimately secured her only a small percentage of her lowest Settlement Demand further necessitates reducing her attorneys' fees." (Doc. No. 125 at 13.)  During an October 18, 2022 Settlement Conference, Plaintiff's lowest settlement demand was $500,000.  (Id.)  The Judgment obtained was $75,000.

24

Therefore, Defendant argues Plaintiff only secured a small percentage of her lowest Settlement Demand.  In her Reply, Plaintiff argues the Settlement Demand represented an amount to settle all claims including attorney's fees and costs, whereas the Judgment excludes attorney's fees and costs.  (Doc. No. 128 at 3.)  Thus, according to Plaintiff, the Settlement Demand and the Judgment are comparable.  (Id.)

The Third Circuit has held that a court may consider "settlement negotiations in its analysis of what constitutes a reasonable fee award in a particular case."  Lohman v. Duryea Borough, 574 F.3d 163, 167 (3d Cir. 2009).  Such evidence may be "relevant when comparing what plaintiff 'requested' to what the plaintiff was ultimately 'awarded.'"  Id.  Evidence of settlement negotiations is "only one indicator of the measure of success" and this determination is "committed to the discretion of the district court."  Id. at 168.  Further, the Third Circuit noted:

> We think it important to note that we hold only that settlement negotiations may be relevant in measuring success, and, if so, are clearly only one factor to be considered in the award of fees.  A court is also free to reject such evidence as not bearing on success when, for instance, negotiations occur at an early stage before discovery, or are otherwise not a fair measure of what a party is truly seeking in damages.

Id. at 169.

Here, Plaintiff's Settlement Demand is not relevant to measuring her success.  As discussed previously, Plaintiff succeeded in all of her claims.  Further, as Plaintiff argues, the Settlement Demand of $500,000 included an award of attorneys' fees.  Consequently, reliance on this settlement demand would be an unfair measure of what Plaintiff seeks in damages.  For these reasons, the Court will not diminish Plaintiff's requested award due to her Settlement Demand and the lodestar calculation described supra will remain unchanged.

### C.  Plaintiff is Entitled to Recover Reasonable Costs

In addition to Attorneys' Fees, Plaintiff seeks to recover an award of $10,429.35 in costs and expenses.  (Doc. No. 124 at 25-26.)  In support of this request, Plaintiff submits an individualized record of costs and expenses.  (Doc. No. 124-7.)  Console's Declaration further attests that the individualized record of costs and expenses "accurately reflect[s] the costs and expenses incurred" by Plaintiff in this litigation.  (Doc. No. 124-3 at 15.)

Defendant does not dispute that, as a prevailing party, Plaintiff is entitled to reasonable costs connected with litigating her claims.  (Doc. No. 125 at 31.)  However, Defendant disputes the reasonableness of the following costs for Plaintiff's medical records and travel expenses:

1. $11.93 for "[p]ostage for medical records requests[,]" ECF No. 124-7 at 2;

2. $4.84 for "[p]laintiff's medical records[,]" id.;

3. $25.20 for "[p]laintiff's medical records[,]" id.;

4. $55.42 for "[p]laintiff's medical records[,]" id.;

5. $37.31 for "[p]laintiff's medical records[,]" id.;

6. $8.99 for "HS travel for trial prep" (specifically, a "Taxi, Uber, Lyft: Uber from Philly office to pick up binders for final PTC)[,]" id. at 3;

7. A repeated charge, this time of $10.99, for "HS travel for trial prep" (also a "Taxi, Uber, Lyft: Uber from Philly office to pick up binders for final PTC)[,]" id.; and,

8. Another charge of $10.61 for "HS travel for trial prep" (another "Taxi, Uber, Lyft: Uber to Philly office for printing/supplies)." Id.

(Id. at 30-31.)

Defendant argues that Plaintiff's request for costs related to obtaining her medical records are unreasonable because her medical records were not relevant to the litigation and the costs are excessive.  (Id. at 31.)  The Court disagrees.  The Third Circuit has held that "[e]xpenses such as reproduction expenses…and postage" may be recovered as reasonable costs.  Marthers v.

Gonzales, No. 05-CV-03778, 2008 WL 3539961, at *4 (E.D. Pa. Aug. 13, 2008).  Nevertheless, although courts have excluded fees related to the preparation of documents which were "irrelevant and unnecessary," that is not the case here.  See Lazarska v. Cty. of Union, No. CIV.A.04-02602, 2006 WL 2264455, at *5 (D.N.J. Aug. 8, 2006).  In this case, Plaintiff's medical records are relevant.  In her Complaint, Plaintiff sought damages for pain and suffering and emotional distress.  (Doc. No. 1 ¶ 65.)  In turn, "Defendant requested documents from Plaintiff regarding any emotional distress damages related to the lawsuit and her claims, those related to any condition upon which her claims were based, and also copies of medical expenses and records from Plaintiff."  (Doc. No. 128 at 9.)  Plaintiff complied with this request and produced various medical records.  Therefore, Plaintiff's costs related to obtaining and producing medical records are relevant and reasonable.

Next, Defendant argues that the Court should decline to award Plaintiff costs for three requests from Holly Smith for Uber travel expenses from CML's office and one request for travel to CML's office.  (Id.)  In general, "[c]osts such as travel and parking expenses are recoverable in civil rights cases so long as they are reasonable and necessary to the litigation."  Middlebrooks, 2019 WL 936645, at *19.  In the disputed entries, Plaintiff seeks costs for travel incurred in preparation for, and during, a pretrial conference in this case.  These travel costs were reasonable and necessary to the litigation.  Therefore, the Court will not reduce Plaintiff's recovery for these entries.

## V.    CONCLUSION

Based on the foregoing reasons, Plaintiff's Petition for Attorneys' Fees and Costs (Doc. No. 124) will be granted.  Plaintiff will be awarded $427,816 in attorneys' fees.  Further, Plaintiff

will be awarded $10,429.35 in costs. Accordingly, Defendant will be ordered to pay Plaintiff a total sum of $438,245.35 in attorney's fees and costs.  An appropriate Order follows.